UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| RICKY N. GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Cause No. 1:14-cv-202 | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Ricky N. Green, on July 3, 2014. For the following reasons,

the decision of the Commissioner is **AFFIRMED**.

*Background*

The plaintiff, Ricky N. Green, filed an application for Supplemental Security Income on

September 29, 2010, alleging a disability onset date of June 1, 2007. (Tr. 19). The Disability

Determination Bureau denied Green's application on December 30, 2010, and again upon

reconsideration on May 24, 2011. (Tr. 86–89, 93–94). Green subsequently filed a timely request

for a hearing on June 28, 2011. (Tr. 19). A hearing was held on December 18, 2012, before

Administrative Law Judge (ALJ) Patricia Melvin, and the ALJ issued an unfavorable decision on

March 7, 2013. (Tr. 19–31). Vocational Expert (VE) Marie N. Kieffer and Green testified at the

hearing. (Tr. 19). The Appeals Council denied review, making the ALJ's decision the final

decision of the Commissioner. (Tr. 1).

At step one of the five step sequential analysis for determining whether an individual is

disabled, the ALJ found that Green had not engaged in substantial gainful activity since

September 29, 2010, the application date. (Tr. 21). At step two, the ALJ determined that Green had the following severe impairments: chronic obstructive pulmonary disease (COPD), multi-level spondylosis of the cervical and lumbar spine, a history of left hip arthritis with left hip replacement, obesity, and depression. (Tr. 21). At step three, the ALJ concluded that Green did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 22). In determining whether Green had an impairment or combination of impairments that met the severity of one of the listed impairments, the ALJ considered Listing 1.04 for spinal disorders, Listing 1.02 for dysfunction of major joints, Listing 3.02 for chronic pulmonary insufficiency, and Listing 12.04 for depression. (Tr. 22–25). For Listing 12.04, the ALJ considered the Paragraph B criteria and the Paragraph C criteria. (Tr. 24–25).

As part of the Paragraph B criteria, the ALJ found that Green had moderate difficulties in social functioning. (Tr. 24). Green's wife described his demeanor as anxious and hateful, which the ALJ found consistent with Dr. Roy's treatment records regarding Green's home interactions. (Tr. 24). The ALJ found that Green's problems with social interactions were limited to his home interactions with close family members. (Tr. 24). The ALJ noted that Green had poor relationships with family members who were abusive to him in the past but had good relationships with other family members. (Tr. 24). Green's wife noted that he would talk with others on the phone and visit his children. (Tr. 24). Dr. Hedrick described Green as pleasant, and Green stated that he never had been fired or laid off for failing to get along with others. (Tr. 24).

The ALJ found that Green had mild difficulties in concentration, persistence, or pace. (Tr. 25). On November 29, 2010, at an examination with Dr. Sherwin Kepes, Green reported

severe, transient symptoms of depression. (Tr. 25). However, at that examination, Green performed well on concentration and memory tests. (Tr. 25). Additionally, he knew relevant details about himself and current events, performed addition, subtraction, multiplication, and division tasks with only one error, and his judgment and commonsense were not grossly compromised. (Tr. 25).

The ALJ then assessed Green's residual functional capacity (RFC) as follows:

> the claimant has the residual functional capacity to lift ten pounds occasionally and to lift/carry less than ten pounds frequently; stand/walk for 2 hours out of an 8-hour work day; sit for 6 hours out of an 8-hour work day; he must never climb ladders, ropes, or scaffolds, ramps, or stairs; he can only occasionally balance, stoop, kneel, crouch, and crawl; he must avoid concentrated exposure to extreme cold, extreme heat, chemicals, and irritants such as fumes, odors, dust, and gases; and, he is limited to only occasional interaction with coworkers, supervisors, and the public.

(Tr. 25–26). The ALJ explained that in considering Green's symptoms she followed a two-step process. (Tr. 26). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Green's pain or other symptoms. (Tr. 26). Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Green's functioning. (Tr. 26).

The ALJ considered the opinion of state agency psychological consultant, Maura Clark, Ph.D., who concluded that Green had limitations consistent with semi-skilled work and had the ability for constant, superficial interaction with co-workers and supervisors. (Tr. 27). The ALJ noted that a second state agency psychological consultant, Kenneth Neville, Ph.D., agreed with Dr. Clark's assessment. (Tr. 27). The ALJ afforded those opinions great weight because she found them consistent with the evidence. (Tr. 27). However, she found greater social limitations

and that Green could perform other unskilled jobs. (Tr. 27). The ALJ indicated that the consultants' opinions would not preclude any of the unskilled jobs mentioned at step five. (Tr. 27).

The ALJ noted that, outside of his psychiatric care records, Green often denied having significant psychiatric problems and that his treating physicians did not suggest such problems independently or regularly. (Tr. 27). For example, Green denied having psychiatric symptoms to Dr. Hedrick on September 13, 2012 and told his treating psychotherapist on October 24, 2011 that he was primarily applying for disability for medical as opposed to psychiatric reasons. (Tr. 27). Green was diagnosed with depression based on an inability to adjust to reduced financial circumstances. (Tr. 27–28).

Following his diagnosis, Green was prescribed several psychiatric medications, which the ALJ concluded were helpful. (Tr. 28). For example, on November 28, 2012, Green reported that Buspar had decreased his symptoms of anxiety and depression and had improved his ability to sleep. (Tr. 28). On September 18, 2012, Dr. Kay Roy indicated that his sleep had improved. (Tr. 28). Dr. Roy also reported that Green enjoyed spending time with his five children, which she interpreted to show significant retained abilities for social function and a non-disabling degree of depression. (Tr. 28). At that time, Dr. Roy assessed Green's level of distress as moderate, but Green did describe significant relationship issues at home. (Tr. 28).

The ALJ found other reports or evaluations of Green's greater symptoms of depression as transient problems or of doubtful character. (Tr. 28). In May 2010, Green referred himself to an intake evaluation for psychiatric care but had never received such care before. (Tr. 28). At that time, Green stated he was applying for disability and needed help, which the ALJ concluded suggested a secondary purpose for the visit. (Tr. 28). In September 2011, at a second intake

4

evaluation, Green reported significant depression to Klinton Krause, M.S., L.M.H.C., but stated that he was grieving his father's recent death. (Tr. 28). Additionally, the ALJ found that the record reflected subsequent improvements to his symptoms. (Tr. 28).

The ALJ then addressed the January 22, 2013 opinion of Dr. Roy, Green's treating psychologist. (Tr. 28). In her assessment, Dr. Roy indicated that Green initially was severely depressed but that his energy level had improved with treatment and that he was able to lose some weight. (Tr. 28). The ALJ noted that Dr. Roy's assessment focused on Green's relationships at home, which the ALJ indicated were outside of her scope in assessing Green's ability to work. (Tr. 28). Although the ALJ found that Dr. Roy's observations indicated improvement with treatment, Dr. Roy concluded that Green's mental illness would cause him to miss more than three days of work per month. (Tr. 28). She also found that Green would have difficulty concentrating throughout the work day and would remain on task between seventy and eighty-four percent of the time. (Tr. 28). Additionally, Dr. Roy stated that Green would have difficulties dealing with people, which she based on his self-reports that he did not like people and had no friends. (Tr. 28). The ALJ found that conclusion, along with most of Dr. Roy's opinion, to be overly-reliant on Green's self-reports. (Tr. 28–29). Additionally, the ALJ found that Green's ability to relate to treating sources and at the hearing demonstrated less marked limitations. (Tr. 28). The ALJ gave Dr. Roy's opinion little weight because she found it inconsistent with the findings in the record and Green's problems had improved with treatment. (Tr. 29).

At step four, the ALJ found that Green could not perform his past relevant work. (Tr. 29). Considering Green's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that Green could perform, including addresser (100 jobs

regionally, 700 jobs in Indiana, and 96,000 jobs nationally), surveillance systems monitor (150 jobs regionally, 600 jobs in Indiana, and 40,000 jobs nationally), and document preparer (200 jobs regionally, 1,000 jobs in Indiana, and 45,000 jobs nationally).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."); ***Pepper v. Colvin***, 712 F.3d 351, 361–62 (7th Cir. 2013); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098; ***Pepper***, 712 F.3d at 361–62; ***Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013); ***Rice v. Barnhart***, 384 F.3d 363, 368–69 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez***, 336 F.3d at 539.

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § 416.920(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. § 416.920(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job

experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f)**.

Green has argued that the ALJ improperly evaluated the opinion of Dr. Roy. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(d)(2)**; *see Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)); *see* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." *Bates*, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, *Latkowski v. Barnhart*, 93 Fed. App'x 963, 970–71 (7th Cir. 2004); *Jacoby v. Barnhart*, 93 Fed. App'x 939, 942 (7th Cir. 2004). If the ALJ was unable to

discern the basis for the treating physician's determination, the ALJ must solicit additional information. *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009)). Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see Punzio*, 630 F.3d at 713.

Dr. Roy found that Green would miss work more than three days a month and only could stay on task between seventy and eighty-four percent of the time. The VE testified that an individual could not maintain employment if he missed twelve or more days per year or if he could not maintain attention and concentration for ninety percent of the workday. Green noted that the ALJ partially discounted Dr. Roy's opinion that Green had problems dealing with others because she found it overly-reliant on Green's self-report. However, Green has argued that, even if he did not have problems with others, Dr. Roy still found that he could not work because he could not maintain attention and concentration sufficiently, lacked self-esteem, and had sleep problems, poor frustration tolerances, and OCD tendencies. Furthermore, he indicated that he could not maintain competitive employment even if Dr. Roy's opinion on absenteeism was cut in half because he would still miss over twelve days per year.

Green has also claimed that the ALJ cherry-picked the evidence regarding his social functioning. He noted that the ALJ identified evidence that he could talk with others and was pleasant. Additionally, he indicated that the ALJ discounted his social functioning issues because many of the interactions were confined to Green's home, which would not affect his

ability to work.  However, Green has argued that the ALJ failed to identify evidence supporting his claims.  Specifically, that the ALJ failed to note that Dr. Shao found he snapped at people in public, that he reported feelings of people watching him at home, and that he frequently checked outside to ensure that people were not looking into his home.  The ALJ also noted that Dr. Kepes found that he had anxiety with symptoms closely related to social phobia.

Green acknowledged that the ALJ relied on evidence that he denied serious psychiatric problems and told a treating psychotherapist that he was applying for disability primarily for medical rather than psychiatric reasons.  However, Green has indicated that Dr. Roy was in the best position to draw opinions regarding his psychological limitations because she was a mental health specialist who treated him rather than a non-mental health professional.  He noted that Dr. Roy's opinion was the most recent and that she gave a detailed explanation of his symptoms and her findings.  Last, Green acknowledged that he had improved with treatment but stated that he could not work despite his improvement.

The Commissioner has argued that the ALJ minimally articulated her reasons for discounting Dr. Roy's opinion.  The Commissioner noted that the ALJ found Dr. Roy's conclusions inconsistent with the record.  She indicated that a state agency medical expert found that Green could understand, remember, and carry out semi-skilled tasks, could relate to co-workers and supervisors on a superficial basis, and could remain on task to sufficiently complete those tasks.  The Commissioner also identified that Green denied having psychiatric symptoms to non-psychiatric physicians and other psychological professionals and that he told his treating psychotherapist that he was applying for disability for medical rather than psychiatric reasons.

The court finds that the ALJ minimally articulated her reasons for rejecting Dr. Roy's opinion.  A treating source's opinion is entitled to controlling weight unless it is contradicted by

well-supported evidence, including the claimant's own testimony. ***Bates***, 736 F.3d at 1099–1100. The ALJ found Dr. Roy's opinion inconsistent with those of Drs. Clark and Neville, who found that Green could perform semi-skilled work with constant, superficial interaction with co-workers and supervisors. Additionally, the ALJ noted that Green denied having significant psychiatric problems including telling Dr. Hedrick on September 13, 2012 that he did not have psychiatric symptoms. Moreover, the ALJ indicated that Green told his treating psychotherapist on October 24, 2011 that he was applying for disability primarily for medical rather than psychiatric reasons. Therefore, the ALJ minimally articulated her reasons for not giving Dr. Roy's opinion controlling weight.

However, the ALJ also indicated other reasons for giving Dr. Roy's opinion little weight. The ALJ mentioned Dr. Roy's conclusion that Green had improved with treatment and that much of Dr. Roy's assessment focused on relationships at home, which were outside the scope of review for assessing his work limitations. Additionally, the ALJ found that Dr. Roy's opinion was overly-reliant on Green's self-reports that he did not like people and had no friends. The ALJ also found Green's ability to relate to treating sources and at the hearing inconsistent with Dr. Roy's findings. Based on the above findings, the ALJ supported her decision with substantial evidence and Green has failed to show that the ALJ erred in supporting her decision.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 18th day of June, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge